UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| PATRICK A. LEE, | ) | CIV. 13-5019-JLV |
| FLOYD HAND, and | ) | |
| WILLIAM J. BIELECKI, SR., | ) | |
| | ) | |
| Plaintiffs, | ) | ORDER |
| | ) | |
| vs. | ) | |
| | ) | |
| CLEVE HER MANY HORSES, | ) | |
| Acting Superintendent of Bureau | ) | |
| of Indian Affairs, Pine Ridge | ) | |
| Agency, Pine Ridge Indian | ) | |
| Reservation, South Dakota; and | ) | |
| RUTH BROWN, JIM MEEKS, | ) | |
| CHARLES L. CUMMINGS, CRAIG | ) | |
| DILLON, STANLEY LITTLE WHITE | ) | |
| MAN, BERNIE SHOT WITH | ) | |
| ARROW, PAUL LITTLE, BARBARA | ) | |
| DULL KNIFE, JAMES CROSS, | ) | |
| LYDIA BEAR KILLER, DANIELLE | ) | |
| "DANI" LEBEAU, TROY "SCOTT" | ) | |
| WESTON, DAN RODRIGUEZ, | ) | |
| JACQUELINE F. SIERS, | ) | |
| GARFIELD STEELE, KEVIN | ) | |
| YELLOW BIRD STEELE, IRVING | ) | |
| PROVOST, ROBIN TAPIO, | ) | |
| LAWRENCE "LARRY" EAGLE | ) | |
| BULL, JOHN HASS, BETTE | ) | |
| GOINGS, and TATEWIN MEANS, | ) | |
| each in their individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

On April 3, 2013, plaintiffs Patrick A. Lee, Floyd Hand and William J.

Bielecki, Sr., each appearing *pro se*, filed an amended complaint against the

defendants.[1]  (Docket 9).  The amended complaint seeks a writ of mandamus against all the defendants and includes the following request for relief:

(1) protection for Mr. Lee, as Chief Judge of the Oglala Sioux Tribal Court, from removal by the Oglala Sioux Tribe ("OST") Tribal Council; (2) protection for Rhonda Two Eagles, as OST Tribal Secretary, from removal by the OST Tribal Council; (3) protection for Mr. Bielecki from removal from the Pine Ridge Indian Reservation by the OST Tribal Council; (4) protection of the Treaty Council Members from arbitrary arrest; (5) protection for the rights of the Oyate (people) against entrapment by a despotic form of government; (6) protection for freedom of the press and free speech pursuant to Article XII of the OST Bill of Rights; and (7) that defendant Cleve Her Many Horses, as Acting Superintendent of the Bureau of Indian Affairs of Pine Ridge Agency of the Pine Ridge Indian Reservation ("BIA"), be ordered to enforce the civil rights of the people pursuant to the Indian Civil Rights Act of 1968 and other federal statutes.  Id. at p. 33.

On May 23, 2013, defendants Ruth Brown, Jim Meeks, Charles L. Cummings, Craig Dillon, Stanley Little White Man, Bernie Shot With Arrow, Paul Little, Barbara Dull Knife, James Cross, Lydia Bear Killer, Danielle

---

[1]Cleve Her Many Horses became the Acting Superintendent of the Pine Ridge Agency on May 7, 2013.  Pursuant to Fed. R. Civ. P. 25(d), Mr. Her Many Horses is automatically substituted for Robert Ecoffey as the defendant in this case.

Lebeau, Troy Weston, Dan Rodriguez, Jacqueline F. Siers, Garfield Steele, Kevin Yellow Bird Steele, Irving Provost, Robin Tapio, Lawrence Eagle Bull, John Haas,[2] Bette Goings, and Tatewin Means (jointly referred to as the "individually named defendants") filed a motion to dismiss plaintiffs' complaint.  (Docket 28).  Among other reasons, the motion seeks dismissal because:  (1) pursuant to Fed. R. Civ. P. 12(b)(1) the court lacks subject matter jurisdiction; (2) the amended complaint seeks redress over exclusively internal tribal matters; and (3) pursuant to Rule 12(b)(6) the amended complaint fails to state a claim for relief.  Id. at p. 2.  On June 13, 2013, defendant Acting Superintendent Her Many Horses filed a motion to dismiss plaintiffs' amended complaint pursuant to Rules 12(b)(1), 12(b)(6) and 19(b).  (Docket 33).

Following a number of extensions for completion of briefing, defendants' motions to dismiss are ripe for resolution.  For the reasons stated below, the individually named defendants' motion to dismiss (Docket 28) is granted and Mr. Her Many Horses' motion to dismiss (Docket 33) is granted.

## STANDARD OF REVIEW

A *pro se* complaint must be liberally construed.  "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than

---

[2]Plaintiffs' amended complaint uses the spelling "Hass" in the caption and "Haas" throughout the text of the document.  The court will use "Haas" in this order because the Oglala Lakota Nation website lists Mr. Haas as its Executive Director.

formal pleading drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal citations and quotation marks omitted). *Pro se* pleadings are to be construed liberally, but *pro se* litigants are still expected to comply with procedural and substantive law.[3] Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984). "While a court generally affords *pro se* filings a liberal construction, a litigant's *pro se* status does not excuse him from reading the Federal Rules of Civil Procedure." Jiricko v. Moser & Marsalek, P.C., 184 F.R.D. 611, 615 (E.D. Mo. 1999), aff'd, 187 F.3d 641 (8th Cir. 1999) (referencing McNeil v. United States, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

---

[3]These *pro se* litigants seek relief for Ms. Two Eagles, Treaty Council Members and the Oyate. While plaintiffs are entitled to represent themselves, they are not permitted to represent others, whether individuals or associations. Knoefler v. United Bank of Bismarck, 20 F.3d 347, 348 (8th Cir. 1994) ("A nonlawyer, such as these purported 'trustee(s) pro se' has no right to represent another entity, i.e., a trust, in a court of the United States."); Joshua Building Trust v. Clementi, 78 F.3d 588 (8th Cir. 1996) (Table) ("A non-lawyer trustee may not represent a trust pro se in federal court."); Elustra v. Mineo, 595 F.3d 699, 704 (8th Cir. 2010) ("pleadings may be brought before the court only by parties or their attorney."). The court will only address the individual claims of the *pro se* plaintiffs.

"[P]ro se litigants must set [a claim] forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." Stringer v. St. James R-1 Sch. Dist., 446 F.3d 799, 802 (8th Cir. 2006). "A *pro se* [complaint] should be 'interpreted liberally and . . . should be construed to encompass any allegation stating federal relief.' " Bracken v. Dormire, 247 F.3d 699, 704 (8th Cir. 2001) (citing White v. Wyrick, 530 F.2d 818, 819 (8th Cir.1976)). "A remedial interpretation of this kind often involves supplying legal or factual statements that the [complaint] should contain, or relaxing the rule that requires such statements, where it reasonably appears that they were omitted merely for lack of legal know-how." Id. With that background, the court takes up defendants' motions to dismiss the amended complaint.

Rule 12 provides in part:

(b)    . . . a party may assert the following defenses by motion:

    (1)    lack of subject-matter jurisdiction;
    . . . .
    (6)    failure to state a claim upon which relief
        can be granted . . . .

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. . . . No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

Fed. R. Civ. P. 12(b)(1) & (6).

"In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on

5

the factual truthfulness of its averments." <u>Titus v. Sullivan</u>, 4 F.3d 590, 593 (8th Cir. 1993) (internal citation omitted).  "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion [to dismiss] is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." <u>Id.</u> (internal citation omitted).  While considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction the court must "accept all factual allegations in the pleadings as true and view them in the light most favorable to the nonmoving party." <u>Great Rivers Habitat Alliance v. Federal Emergency Management Agency</u>, 615 F.3d 985, 988 (8th Cir. 2010).  "The burden of proving federal jurisdiction, however, is on the party seeking to establish it, and this burden may not be shifted to the other party." <u>Id.</u> (internal quotation marks and brackets omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations, quotation marks and brackets omitted).  The "plausibility standard" at the pleading stage requires a showing greater than the mere possibility of misconduct yet less than the probability of misconduct.

6

Id. at 556-58.  To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570) (other internal citation omitted).  The Court in Iqbal expounded on the "plausibility standard" articulated in Twombly:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " . . .
>
> [T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. . . . [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged-but it has not "show[n]"—"that the pleader is entitled to relief."

556 U.S. at 678-79 (internal citations omitted).  See also Taxi Connection v. Dakota, Minnesota & E. R.R. Corp., 513 F.3d 823, 826 (8th Cir. 2008) ("In analyzing a 12(b)(6) motion, this court assumes all factual allegations in the complaint are true, but the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal.") (internal quotation marks omitted).  "A motion to dismiss should be granted if it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief."  Id.

The court is not required to state findings of fact or conclusions of law when ruling on a Rule 12 motion.  Fed. R. Civ. P. 52(a)(3).  However, in all fairness to the parties, the court will set forth its reasons for granting defendants' motions.

## FACTUAL ALLEGATIONS

Plaintiffs' amended complaint is thirty-eight pages in length, heavily laden with conclusory statements of law, citation to numerous legal authorities and far exceeds the boundaries contemplated by Rule 8(a)(2).[4]  (Docket 9 at

---

[4]Under Rule 8(a)(2), a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of this Rule is to give a defendant fair notice of plaintiff's claims and the grounds upon which those claims rest.  Twombly, 550 U.S. at 555.

¶¶ 27-110).  The amended complaint also contains eleven footnotes purporting
to set out various sections of the OST Constitution, the OST Tribal Council
Code of Conduct, the OST Law and Order Code, and various legal terms.  Id. at
n. 1-11.  Attached to the amended complaint as exhibits are plaintiffs' Request
for Criminal Prosecution directed to the OST Attorney General (Docket 9-1) and
a Complaint for Impeachment Against Patrick Lee, Chief Judge of the Oglala
Sioux Tribal Court (Docket 9-2).  The amended complaint references a number
of exhibits which were attached to the original complaint (Docket 1) but were
not attached to the amended complaint.[5]  See Dockets 1-1 through 1-3, 8-1 &
8-2.  Giving these *pro se* plaintiffs the benefit of the rule of liberal
interpretation, the amended complaint alleges the following facts.  Estelle, 429
U.S. at 106; Bracken, 247 F.3d at 704.  The facts and all reasonable inferences
are considered as true for purposes of resolving the pending motions.  Great
Rivers Habitat Alliance, 615 F.3d at 988.

Plaintiff Patrick Lee is an OST enrolled member.  (Docket 9 at ¶ 3).  Mr.
Lee is the former Chief Judge of the OST Tribal Court.  Id.  Floyd Hand is an
OST enrolled member.  Id. at ¶ 1.  Mr. Hand is an Oglala Lakota Sioux delegate

---

[5]"It is well-established that an amended complaint supercedes an original
complaint and renders the original complaint without legal effect."  In re Atlas
Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000) (citation omitted).  "[I]n
cases where a plaintiff has filed an amended complaint, federal courts must
resolve questions of subject matter jurisdiction by examining the face of the
amended complaint."  Id.  Giving liberal interpretation to plaintiffs' *pro se*
pleadings, the court will consider all exhibits referenced in the amended
complaint but which are attached to the original complaint.

to the Black Hills Sioux Nation Treaty Council and a cultural and spiritual interpreter and teacher.  Id.  Plaintiff William Bielecki, Sr., is a non-Indian who was adopted into the Oglala Sioux Nation as a brother to Mr. Hand.  Id. at ¶ 2. Mr. Bielecki is licensed as a lay advocate in the Oglala Sioux Tribal Courts.  Id.

Defendant Cleve Her Many Horses is the Acting Agency Superintendent of the Pine Ridge Agency ("Acting Agency Superintendent Her Many Horses"). Robert Ecoffey is the former Agency Superintendent.  Id. at ¶ 4.  The individually named defendants are all OST enrolled members.  Id. at ¶¶ 5-26. Except for Ms. Goings, Mr. Haas, and Ms. Means the individually named defendants are members of OST Tribal Council, representing the nine districts of the Pine Ridge Indian Reservation.  Id. at ¶¶ 5-23.  Ms. Goings is the OST Tribal Court Acting Court Administrator.  Id. at ¶ 24.  Mr. Haas is the OST Executive Director.  Id. at ¶ 25.  Ms. Means is the OST Attorney General.  Id. at ¶ 26.

In November 2008, the Oyate voted to adopt an amendment to the OST Constitution containing  several provisions.  (Docket 9 at ¶ 28); see Exhibit N (Docket 1-2 at pp. 42-43).  Article V—Judicial Powers—established a separation of powers of the judicial branch, the OST Supreme Court and OST Tribal Courts from the executive branch, the OST Tribal Council and the OST Executive Committee.  (Docket 1-2 at p. 42).  Article V declared "no elected official exercising powers of the Tribal Council or the Executive Committee shall exercise powers vested in the Supreme Court or other inferior tribal

courts." <u>Id.</u>  Article VIII—Removal of Officers—directed that "[a]ny member or officer of the tribal council who is convicted of a felony or any other offense involving dishonesty shall forfeit his office." <u>Id.</u>  Article XII—Bill of Rights—provided:

> The Tribal Council in exercising its inherent powers of self-governance, shall not make any tribal law or enforce any tribal, state or federal law that:
>
> > (f)     Denies to any person in a criminal proceeding the right to a speedy and public trial, to be informed of the nature and cause of the accusation, to be confronted with the witnesses against the person, to have compulsory process for obtaining witnesses in the person's favor, and at the person's own expense, to have the assistance of counsel for the person's defense; . . .[and]
> >
> > (h)     Denies to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law[.]

<u>Id.</u> at p. 43.

In the fall of 2011, the OST Tribal Court assumed supervision of its court personnel.  (Docket 9 at ¶ 31).  Chief Judge Lee dismissed Court Administrator John Hussman, Assistant Court Administrator Betty Goings and Geraldine Red Cloud for office misconduct.  <u>Id.</u>

The OST Tribal Council (apparently after terminating Chief Judge Lee) appointed Paula Langworthy as the new Chief Judge.  <u>Id.</u> at ¶ 32.  Chief Judge Langworthy reinstated Mr. Hussman, Ms. Goings and Ms. Red Cloud.  <u>Id.</u>

In January 2012, the OST Supreme Court issued an order directing Chief Judge Lee to propose a Court Personnel Code to the OST Tribal Council. Id.  The Tribal Council was given six months to either adopt the proposed code or adopt its own court personnel code.  Id.  When the Tribal Council failed to act, the proposed Court Personnel Code was adopted on May 22, 2012, to go into effect on November 22, 2012.  Id.  On July 13, 2012, the Tribal Council adopted Ordinance 12-11, which established a Court Organizational Chart. Id. at ¶ 33.

In July 2012, Chief Judge Langworthy terminated Mr. Hussman as OST Court Administrator.  Id. at ¶ 34.  On August 14, 2012, Chief Judge Langworthy promoted Ms. Goings to the position of Acting Court Administrator. Id. at ¶ 35.  At some point in time, Chief Judge Langworthy was terminated by the OST Tribal Council and Mr. Lee was reinstated as Chief Judge.[6]  Id. at ¶ 32).

On October 31, 2012, Chief Judge Lee terminated Acting Court Administrator Goings and Tim Chief Eagle for office misconduct.  Id. at ¶ 36; see also Exhibit Q (Docket 1-2 at p. 68).  On November 8, 2012, OST

---

[6]The amended complaint provides no dates for the appointment of Chief Judge Langworthy, her termination of the three court employees, her termination as Chief Judge, or the reappointment of Chief Judge Lee.  This lack of specificity creates confusion in the chronology of the subsequent factual allegations.

Executive Director Mike Her Many Horses[7] reinstated Ms. Goings and placed her on administrative leave.  Id. at ¶ 40. Chief Judge Lee issued an order directing Mr. Her Many Horses to appear and show cause why he should not be held in contempt of court for interfering in court personnel matters.  Id.  Mr. Her Many Horses failed to appear at the show cause hearing and a bench warrant was issued.  Id.  The bench warrant was appealed to the OST Supreme Court and remained unresolved as of the filing of the amended complaint.  Id.

On December 5, 2012, Ms. Goings filed a grievance against Chief Judge Lee.  Id. at ¶ 38; see also Exhibit S (Docket 1-2 at p. 72).  OST Tribal Council member Robin Tapio filed a complaint against Chief Judge Lee.  (Docket 9 at ¶ 38).  Both the grievance and complaint sought the removal of Chief Judge Lee.  Id.

On December 26, 2012, the OST Tribal Council convened a meeting to publicly consider Ms. Goings' grievance.  Id. at ¶ 41.  The Tribal Council did not give notice to Chief Judge Lee.  Id.  The Tribal Council suspended Chief Judge Lee without pay.  Id.  Saunie K. Wilson was appointed Temporary Chief Judge.  Id. at ¶ 43.

On January 9, 2013, the Tribal Council passed Ordinance 13-04.  Id. at ¶ 47; see also Exhibit F (Docket 1-2 at pp. 19-22).  This ordinance rescinded

---

[7]"Mr. Her Many Horses" to avoid confusion with Acting Agency Superintendent Her Many Horses.

the court organizational structure created by Ordinance 12-11.  (Docket 1-2 at p. 19).  The new ordinance appears to create an organizational structure in which the OST Tribal Court, its judges and court personnel are under the supervision of the Tribal Council, the President of the Tribal Council and its Executive Director.  Id. at p. 22.

On January 22, 2013, Mr. Lee was placed on trial before the Tribal Council.  (Docket 9 at ¶ 49).  The Tribal Council adopted Ordinance 41-26 and Resolution 41-90 as the procedures for conducting the hearing.  Id.; see also Exhibits G & H (Docket 1-2 at pp. 23-29); Exhibits A & B (Docket 1-2 at pp. 5-8).  Following consideration of limited testimony, the Tribal Council dismissed Ms. Goings' complaint and restored Mr. Lee to the position of Chief Judge.  Id. at ¶ 51.  He was awarded back pay.  See Exhibit J (Docket 1-2 at p. 31).

On February 5, 2013, the Tribal Council passed Ordinance 13-05.  (Docket 9 at ¶ 53; see also Exhibit K (Docket 1-2 at p. 32)).  This ordinance amended "Ordinance No. 07-50, to give the Executive Director the full power of that position."  (Docket 1-2 at p. 32).  Ordinance 07-50 adopted the Amended 2007 OST Personnel Policies and Procedures.  See Exhibit L (Docket 1-2 at p. 34).  Mr. Haas, as the new Executive Director, rehired Ms. Goings as the Assistant Court Administrator and she returned to work on February 11, 2013.  (Docket 9 at ¶¶ 53-55).

On March 5, 2013, Mr. Bielecki, on behalf of Mr. Lee, Mr. Hand and himself, prepared a complaint against the individually named defendants containing multiple counts of alleged criminal and ethical violations.  Id. at ¶ 57; see also (Dockets 1-1 & 8-1).  This complaint is 110 pages in length, contains 236 numbered paragraphs, and seeks the removal of the individually named defendants from their positions of authority with the OST for multiple violations of the United States and OST Constitutions, statutes and ordinances (the "OST Complaint").  (Dockets 1-1 & 8-1).

That same day Mr. Lee, Mr. Hand and Mr. Bielecki delivered the OST Complaint to Agency Superintendent Robert Ecoffey.  (Docket 9 at ¶ 58).  Mr. Ecoffey stated he would forward copies of the OST Complaint to the BIA Area Office in Aberdeen, South Dakota, and to the BIA headquarters in Washington, D.C., and wait for further instructions from his superiors.  Id. at ¶ 61.

Later that day all three plaintiffs presented a copy of the OST Complaint to the OST Secretary.  Id. at ¶ 63.  OST President Bryan Brewer, OST Tribal Council Staff Attorney Lisa Adams and OST Secretary Rhonda Two Eagles met with the plaintiffs.  Id. at ¶ 64.  Mr. Bielecki advised those in attendance the OST Complaint sought the immediate suspension of the named tribal officers pending resolution of the OST Complaint.  Id. at ¶ 65.  Attorney Adams questioned how the Tribal Council could immediately suspend its entire membership and then consider a motion for impeachment.  Id. at ¶ 66.  Mr.

15

Bielecki responded it would be a conflict of interest for the Tribal Council to entertain a motion for impeachment if the council was immediately suspended. Id.  Following further discussion, President Brewer approved filing of the OST Complaint with Secretary Two Eagles.  Id. at ¶¶ 68-71.

Mr. Bielecki proceeded to the office of Attorney General Tatewin Means. Id. at ¶ 74.  Mr. Bielecki filed a request for criminal prosecution against all of the individually named defendants, other than Ms. Means.  Id.; see also Docket 9-1 ("Request for Criminal Prosecution").

On March 11, 2013, the Tribal Council dismissed the OST Complaint filed against them with prejudice.  (Docket 9 at ¶ 93).  Later that day the Tribal Council voted to terminate Chief Judge Lee without notice or a hearing.  Id. at ¶ 96.

Plaintiffs say they "are not asking [the court] to amend nor modify the laws of the Oglala Sioux Tribe, but to enforce the equal applications and protections of the law from renegade Councils that use their powers to instill nothing but despotism through an Oligarchy form of government.  The Federal Government has a duty owed to the people under its guardianship (Indians are wards of the Federal Government) and trust obligations.  Its time the Federal Government started honoring its duties."  Id. at ¶ 107 (emphasis in original, bold omitted).

## DISCUSSION

Plaintiffs allege the court has jurisdiction to resolve their claims pursuant to 28 U.S.C. §§ 1331, 1332, 1343, & 1361, 42 U.S.C. §§ 1983 & 1985, 18 U.S.C. §§ 241, 242 & 1153, and 25 U.S.C. §§ 1301-1303.  Id. at pp. 2-3.  "The threshold inquiry in every federal case is whether the court has jurisdiction and we have admonished district judges to be attentive to a satisfaction of jurisdictional requirements in all cases."  Rock Island Millwork Co. v. Hedges-Gough Lumber Co., 337 F.2d 24, 26-27 (8th Cir. 1964).  "Lack of jurisdiction of the subject matter of litigation cannot be waived by the parties or ignored by the court."  Id. at p. 27.  "A federal court has jurisdiction to consider its own subject matter jurisdiction."  Robins v. Ritchie, 631 F.3d 919, 930 (8th Cir. 2011).  Each of plaintiffs' jurisdictional citations are discussed below.

A number of plaintiffs' jurisdictional claims are summarily dismissed. The diversity statute gives the court original jurisdiction over claims in excess of $75,000 involving citizens from different states.  28 U.S.C. § 1332(a)(1). Plaintiffs' amended complaint acknowledges all parties are residents of the Pine Ridge Indian Reservation in the state of South Dakota or are otherwise residents of South Dakota.  Section 1332 does apply to this case.

Plaintiffs' citation to the Indian Civil Rights Act is similarly unavailing. The Indian Civil Rights Act, 25 U.S.C. §§ 1301-1303, ("ICRA") provides in part:

No Indian tribe in exercising powers of self-government shall--

> (1)   make or enforce any law prohibiting the free exercise of religion, or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble and to petition for a redress of grievances;
> . . .
> (8)   deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law . . . .

25 U.S.C. §§ 1302(a)(1) & (8).  Section 1303 of Title 25 is the only remedial provision of the ICRA.  It establishes the "privilege of the writ of habeas corpus . . . to test the legality of [an individual's] detention by order of an Indian tribe." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978).  "[T]he ICRA does not impliedly authorize actions for declaratory or injunctive relief against either the tribe[] or tribal officers."  Runs After v. United States, 766 F.2d 347, 353 (8th Cir. 1985) (referencing Santa Clara Pueblo, 436 U.S. at 72).  "[D]espite the substantive guarantees of certain constitutional rights contained in the ICRA, the only federal relief available under the Indian Civil Rights Act is a writ of habeas corpus . . . and [t]hus, actions seeking other sorts of relief for tribal deprivations of rights must be resolved through tribal forums."  Id. (citing Goodface v. Grassrope, 708 F.2d 335, 338, n. 4 (8th Cir. 1983)) (internal quotation marks omitted).  The Indian Civil Rights Act "is directed not at the federal government, but rather at Indian tribes."  Wopsock v. Natchees, 454 F.3d 1327, 1333 (Fed. Cir. 2006).  "Thus it does not impose duties upon the

18

federal government or its officials." Id.  The ICRA does not grant jurisdiction in this court over the allegations of the amended complaint against either the individually named defendants or Acting Agency Superintendent Her Many Horses.

The Major Crimes Act, 18 U.S.C. § 1153, cited by plaintiffs, is a criminal statute granting federal district courts jurisdiction over certain crimes committed on Indian reservations.  Keeble v. United States, 412 U.S. 205, 215 (1973).  Section 241 of Title 18 creates a criminal offense against individuals who conspire to injure or intimidate any person in the free exercise of their rights and privileges under the Constitution or the laws of the United States. Section 242 of Title 18 creates a criminal offense if a person, acting under color of any law subjects another to the deprivation of his civil rights on the basis of alien status, color or race.  There is no private cause of action arising from the criminal statutes cited by plaintiffs.  See Frison v. Zebro, 339 F.3d 994, 999 (8th Cir. 2003) ("Criminal statutes, which express prohibitions rather than personal entitlements and specify a particular remedy other than civil litigation are . . . poor candidates for the imputation of private rights of action. . . .") (internal citation omitted).  "Where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under [42 U.S.C.] § 1983 or under an implied right of action."  Id. (citing Gonzaga University v. Doe, 536 U.S. 273, 286

19

(2002)).  There is no indication Congress intended to create a private cause of action by enacting 18 U.S.C. §§ 243 or 241.  See Gustafson v. City of West Richland, Nos. CV-10-5040-EFS, CV-10-5058-EFS, 2011 WL 5507201 at *4 (E.D. Wash. Nov. 7, 2011) ("[S]ections 241 and 242 do not provide a private cause of action that may be pursued by individuals.").  See also Newcomb v. Ingle, 827 F.2d 675, 677, n. 1 (10th Cir. 1987) ("Section 241 is a criminal statute prohibiting acts of conspiracy against the rights of citizens, and it does not provide for a private . . . cause of action.").

These criminal statutes, 18 U.S.C. §§ 241, 242 and 1153, do not grant this federal district court civil jurisdiction to consider the allegations of the amended complaint.

## JURISDICTION OVER CLAIMS
## AGAINST INDIVIDUALLY NAMED DEFENDANTS

The district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The Civil Rights Act provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

20

42 U.S.C. § 1983.  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of <u>state</u> law and made possible only because the wrongdoer is clothed with the authority of <u>state</u> law.' " <u>Parker v. Boyer</u>, 93 F.3d 445, 447-48 (8th Cir. 1996) (citing <u>West v. Atkins</u>, 487 U.S. 42, 49 (1988) (emphasis added). "Section 1983 does not confer subject matter jurisdiction.  The statute simply provides a means through which a claimant may seek a remedy in federal court for a constitutional tort when one is aggrieved by the act of a person acting under color of <u>state</u> law." <u>Jones v. United States</u>, 16 F.3d 979, 981 (8th Cir. 1994) (emphasis added).  There is no allegation in the amended complaint that the individually named defendants were acting under color of state law.  It is also improper for the court to infer from the amended complaint that the individually named defendants were acting under color of state law.  Section 1983 does not provide jurisdiction for plaintiffs' claims.  <u>Id.</u>

Conspiracy to interfere with another person's civil rights cited by plaintiffs is addressed in 42 U.S.C. § 1985.  That section provides:

> (1)  Preventing officer from performing duties[.]  If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office,

21

or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

(2)     Obstructing justice; intimidating party, witness, or juror[.]  If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3)     Depriving persons of rights or privileges[.]  If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure

22

> any citizen in person or property on account of such
> support or advocacy; in any case of conspiracy set forth
> in this section, if one or more persons engaged therein
> do, or cause to be done, any act in furtherance of the
> object of such conspiracy, whereby another is injured in
> his person or property, or deprived of having and
> exercising any right or privilege of a citizen of the United
> States, the party so injured or deprived may have an
> action for the recovery of damages occasioned by such
> injury or deprivation, against any one or more of the
> conspirators.

42 U.S.C. § 1985.  "The basis of federal jurisdiction for violations of 42 U.S.C.

§ 1985 is 28 U.S.C. § 1343."  <u>Runs After</u>, 766 F.2d at 353.

Section 1343 of Title 28 confers original jurisdiction in the district court

over of a civil action:

> (1)   To recover damages for injury to his person or property,
> or because of the deprivation of any right or privilege of
> a citizen of the United States, by any act done in
> furtherance of any conspiracy mentioned in [42 U.S.C.
> § 1985);
>
> (2)   To recover damages from any person who fails to prevent
> or to aid in preventing any wrongs mentioned in [42
> U.S.C. § 1985] which he had knowledge were about to
> occur and power to prevent;
>
> (3)   To redress the deprivation, under color of any State law,
> statute, ordinance, regulation, custom or usage, of any
> right, privilege or immunity secured by the Constitution
> of the United States or by any Act of Congress providing
> for equal rights of citizens or of all persons within the
> jurisdiction of the United States;
>
> (4)   To recover damages or to secure equitable or other relief
> under any Act of Congress providing for the protection of
> civil rights, including the right to vote.

28 U.S.C. § 1343(a)(1)-(4).  "In general terms, section 1985 proscribes five different types of conspiracies: (1) conspiracies to interfere with the performance of official duties by federal officers (section 1985(1)); (2) conspiracies to interfere with the administration of justice in federal courts (first clause of section 1985(2)); (3) conspiracies to interfere with the administration of justice in state courts (second clause of section 1985(2)); (4) private conspiracies to deny any person enjoyment of 'equal protection of the laws' and 'equal privileges and immunities under the laws' (first clause of section 1985(3)); and (5) conspiracies to interfere with the right to support candidates in federal elections (second clause of section 1985(3))." Harrison v. Springdale Water & Sewer Commission, 780 F.2d 1422, 1429 (8th Cir. 1986) (referencing Kush v. Rutledge, 460 U.S. 719, 724 (1983).  "[T]hree of the five categories—the first, second and fifth—relate to federal institutions and processes." Id.  None of these three categories relate to the amended complaint.  Similarly, since there is no "administration of justice in state courts" alleged in the amended complaint, there is no claim under the third category, § 1985(2).  Id.  The only section which may provide support for plaintiffs' claims is the fourth category, § 1985(3).

"In each section 1985 case it must be determined whether there is a constitutional source of congressional power to reach the private conspiracy alleged in the complaint." Means v. Wilson, 522 F.2d 833, 838 (8th Cir. 1975).

24

"[I]n order to show a deprivation of equal protection or equal privileges and immunities which may be redressed under 42 U.S.C. § 1985(3), it must be shown that the conspirators were motivated by an invidiously discriminatory animus toward a racial group or perhaps another type of class." Id. at 839. "Today we hold that 42 U.S.C. § 1985(3) protects the right to vote in tribal elections against interference from private conspiracies as well." Id. Allegations that the individually named tribal council members discriminated against the plaintiffs because of their political opposition to them is not actionable under § 1985. Shortbull v. Looking Elk, 677 F.2d 645, 649 (8th Cir. 1982). For § 1985 to apply "there must be a discriminatory animus toward a class, not toward an individual qua individual." Id. (citation omitted).

Plaintiffs have not alleged the actions of the individually named defendants are a private conspiracy premised on class or race. Therefore, § 1985 does not provide a remedy to plaintiffs and 28 U.S.C. § 1343 does not establish jurisdiction in federal court. Runs After, 766 F.2d at 353.

As stated above, the district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. To invoke jurisdiction under § 1331, plaintiffs must identify the particular provisions of the United States Constitution or federal statutes on which their claims are based to raise a federal question. "Federal-question jurisdiction exists when 'the plaintiff's right to relief necessarily depends on

resolution of a substantial question of federal law.' " Biscanin v. Merrill Lynch & Co., Inc., 407 F.3d 905, 906 (8th Cir. 2005) (citing Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983)). "A court does not obtain subject-matter jurisdiction just because a plaintiff raises a federal question in [their] complaint." Id. at 907. "If the asserted basis of federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate. . . . Because this is a facial rather than a factual challenge to jurisdiction, [the court] determine[s] whether the asserted jurisdictional basis is patently meritless by looking to the face of the complaint . . . and drawing all reasonable inferences in favor of the plaintiff[s] . . . ." Id. (internal citations omitted). "[F]ederal question [jurisdiction] exists if the . . . outcome is controlled or conditioned by Federal law . . . but does not exist if the real substance of the controversy centers upon something other than the construction of federal law." Longie v. Spirit Lake Tribe, 400 F.3d 586, 589-90 (8th Cir. 2005) (internal citations and quotation marks omitted). "If an interpretation of tribal . . . law is necessary to establish or clarify a right sought to be enforced . . . then jurisdiction under section 1331 does not exist . . . ." Id. at 590.

Plaintiffs' amended response to the individually named defendants' motion to dismiss focuses upon alleged violations of the OST Constitution and the OST Law and Order Code. (Docket 43). Plaintiffs argue they have no access to the OST court system and, thus, the Santa Clara Pueblo

jurisdictional bar does not apply.  Id. at p. 11.  However, there is no allegation plaintiffs sought relief from the OST Tribal Court or the OST Supreme Court prior to commencement of this federal litigation.  To suggest plaintiffs do not have a tribal remedy is simply their own conclusion unsupported by any factual allegation.  Twombly, 550 U.S. at 555.

Because resolution of plaintiffs' claims against the individually named defendants involves interpretation and application of the OST Constitution and tribal law, those claims are "not within the jurisdiction of the district court." Runs After, 766 F.2d at 352 (referencing Goodface, 708 F.2d at 338-39 & n. 4; Shortbull, 677 F.2d at 650; Garreaux v. Andrus, 676 F.2d 1206, 1209-10 (8th Cir.1982) (per curiam)).  Plaintiffs may not use the federal court to resolve these complaints but must "seek review in tribal court or pursue alternative, political remedies."  Runs After, 766 F.2d at 353.

The court concludes plaintiffs have not identified any constitutional provision or federal statute which would place jurisdiction for their claims in federal district court.  For that reason, the court must dismiss plaintiffs' amended complaint without prejudice against the individually named defendants.

**JURISDICTION OVER CLAIMS AGAINST
ACTING AGENCY SUPERINTENDENT HER MANY HORSES**

"[F]ederal district courts do have subject matter jurisdiction under 28 U.S.C. § 1331 to review, pursuant to the APA,[8] the BIA action."  Runs After,

_____

[8]The Administrative Procedure Act, 5 U.S.C. § 701 et seq.

27

766 F.2d at 351.  However, before jurisdiction is invoked plaintiffs are required to exhaust their administrative remedies.  Id.  The court has "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  "For section 1361 to apply, the plaintiff must seek to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff. . . . Mandamus may issue under section 1361 against an officer of the United States only when the plaintiff has a clear right to relief, the defendant has a clear duty to perform the act in question, and the plaintiff has no adequate alternative remedy."  Longie, 400 F.3d at 591 (citing 28 U.S.C. § 1361) (other citation and quotation marks omitted).

"The governmental interests in requiring exhaustion are particularly strong . . . . It cannot be denied that the BIA has special expertise and extensive experience in dealing with Indian affairs.  The interest of the BIA and its parent Department of Interior in administrative autonomy also supports requiring exhaustion of administrative remedies. . . . [T]he somewhat anomalous and complex relationship between the quasi-sovereign Indian tribes and the federal government also supports, in general, requiring [plaintiffs] to initially seek an administrative solution through the BIA and the Department of Interior."  Runs After, 766 F.2d at 352.

By plaintiffs' own allegations, the OST Complaint was presented to Agency Superintendent Ecoffey on March 5, 2013.  (Docket 9 at ¶ 58). Plaintiffs acknowledge Mr. Ecoffey intended to forward copies of the OST Complaint to the BIA Area Office in Aberdeen, South Dakota, to the BIA headquarters in Washington, D.C., and await further instructions from his superiors.  Id. at ¶ 61.  Plaintiffs filed their federal complaint just nine days later on March 14, 2013.  (Docket 1).

Failure to exhaust administrative remedies deprives this court of jurisdiction to consider plaintiffs' complaint.  See Calico Trailer Manufacturing Co. v. Insurance Company of North America, 155 F.3d 976, 978 (8th Cir. 1998) ("Where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed.") (citing Reiter v. Cooper, 507 U.S. 258, 269 (1993)).  "Consistent with exhaustion principles . . . the dismissal [should] be without prejudice . . . ."  Id.  In the alternative, if the court has jurisdiction at this juncture, the court in the exercise of its discretion will dismiss the amended complaint without prejudice against Acting Agency Superintendent Her Many Horses and require plaintiffs to exhaust their administrative remedies.  Runs After, 766 F.2d at 352.

29

**ORDER**

Based on the above analysis, it is hereby

ORDERED that the individually named defendants' motion to dismiss (Docket 28) is granted.

IT IS FURTHER ORDERED that defendant Her Many Horses' motion to dismiss (Docket 33) is granted.

IT IS FURTHER ORDERED that plaintiffs' amended complaint (Docket 9) is dismissed without prejudice.

Dated March 30, 2014.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE

30